# EXHIBIT A

(Slip Opinion)           OCTOBER TERM, 2023           1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MOORE ET UX. *v.* UNITED STATES

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 22–800.    Argued December 5, 2023—Decided June 20, 2024

Congress generally taxes the income of American business entities in one of two ways. Some entities, such as S corporations and partnerships, are taxed on a pass-through basis, where the entity itself does not pay taxes. 26 U. S. C. §§1361–1362. Instead, the entity's income is attributed to the shareholders or partners, who then pay taxes on that income even if the entity has not distributed any money or property to them. §§61(a)(12), 701, 1366(a)–(c). Other business entities do pay taxes directly on their income. Those entities' shareholders ordinarily are not taxed on that income but are taxed when the entity distributes a dividend or when the shareholder sells shares.

    Congress treats American-controlled foreign corporations as pass-through entities. Subpart F of the Internal Revenue Code attributes income of those business entities to American shareholders and taxes those shareholders on that income. §§951–952. Subpart F, however, applies only to a small portion of the foreign corporation's income, mostly passive income. In 2017, Congress passed the Tax Cuts and Jobs Act. As relevant here, Congress imposed a one-time, backward-looking, pass-through tax on some American shareholders of American-controlled foreign corporations to address the trillions of dollars of undistributed income that had been accumulated by those foreign corporations over the years. Known as the Mandatory Repatriation Tax, the tax imposed a rate from 8 to 15.5 percent on the pro rata shares of American shareholders. §§965(a)(1), (c), (d).

    In this case, petitioners Charles and Kathleen Moore invested in the American-controlled foreign corporation KisanKraft. From 2006 to 2017, KisanKraft generated a great deal of income but did not distribute that income to its American shareholders. At the end of the 2017 tax year, application of the new MRT resulted in a tax bill of

2                  MOORE *v.* UNITED STATES

Syllabus

$14,729 on the Moores' pro rata share of KisanKraft's accumulated income from 2006 to 2017. The Moores paid the tax and then sued for a refund, claiming, among other things, that the MRT violated the Direct Tax Clause of the Constitution because, in their view, the MRT was an unapportioned direct tax on their shares of KisanKraft stock. The District Court dismissed the suit, and the Ninth Circuit affirmed.

*Held*: The MRT—which attributes the realized and undistributed income of an American-controlled foreign corporation to the entity's American shareholders, and then taxes the American shareholders on their portions of that income—does not exceed Congress's constitutional authority. Pp. 5–24.

   (a) Article I of the Constitution affords Congress broad power to lay and collect taxes. That power includes direct taxes—those imposed on persons or property—and indirect taxes—those imposed on activities or transactions. Direct taxes must be apportioned among the States according to each State's population, while indirect taxes are permitted without apportionment but must "be uniform throughout the United States," §8, cl. 1. Taxes on income are indirect taxes, and the Sixteenth Amendment confirms that taxes on income need not be apportioned. Pp. 5–7.

   (b) The Government argues that the MRT is a tax on income and therefore need not be apportioned. The Moores contend that the MRT is a tax on property and that the tax is therefore unconstitutional because it is not apportioned. Income, the Moores argue, requires realization, and the MRT does not tax any income that they have realized. But the MRT *does* tax realized income—namely, the income realized by KisanKraft, which the MRT attributes to the shareholders. This Court's longstanding precedents, reflected in and reinforced by Congress's longstanding practice, confirms that Congress may attribute an entity's realized and undistributed income to the entity's shareholders or partners and then tax the shareholders or partners on their portions of that income. Pp. 8–16.

     (1) The Court's longstanding precedents plainly establish that, when dealing with an entity's undistributed income, Congress may either tax the entity or tax its shareholders or partners. Whichever method Congress chooses, this Court has held that the tax remains a tax on income. In *Burk-Waggoner Oil Assn.* v. *Hopkins*, 269 U. S. 110, the Court held that the status of a business entity under state law could not limit Congress's power to tax a partnership's income as it chose, taxing either the partnership or the partners. *Id.*, at 114. The Court reiterated that principle in *Burnet* v. *Leininger*, 285 U. S. 136. Then, in *Heiner* v. *Mellon*, 304 U. S. 271, the Court reaffirmed that Congress may choose to tax either the partnership *or* the partners on the partnership's undistributed income, even where state law did not

allow the partners to personally receive the income. The principle articulated in *Heiner* also applies to corporations and their shareholders. *Helvering* v. *National Grocery Co.*, 304 U. S. 282. This line of precedents remains good law and establishes the clear principle that Congress can attribute the undistributed income of an entity to the entity's shareholders or partners and tax the shareholders or partners on their pro rata share of the entity's undistributed income. Notably, the principle has repeatedly been invoked by the lower courts in upholding subpart F.

The Moores' reliance on *Eisner* v. *Macomber*, 252 U. S. 189, which predates the *Heiner* and *Helvering* line of cases, is misplaced. There the question was whether a distribution of additional stock to all existing shareholders was taxable income. The Court said no, that income requires realization and that there was no change in the value of the shareholders' total stock holdings in the corporation before and after the stock distribution. The Court said separately in dicta that "what is called the stockholder's share in the accumulated profits of the company is capital, not income." 252 U. S., at 219. The Moores' interpret that language to mean that a tax attributing an entity's undistributed income to its shareholders or partners is not an income tax. The clear and definitive holdings in *Burk-Waggoner Oil*, *Heiner*, and *Helvering* render the Moores' reading of *Eisner* implausible. Those cases squarely addressed attribution and allowed it, whereas *Eisner* did not address attribution. Pp. 9–14.

(2) Congress's longstanding practice of taxing the shareholders or partners of a business entity on the entity's undistributed income reflects and reinforces the Court's precedents. For example, Congress passed an 1864 income-tax law that taxed shareholders or partners on "the gains and profits of all companies." 13 Stat. 282. In 1913, Congress enacted a new income tax that, among other things, taxed partners on their "share of the profits of a partnership." 38 Stat. 169. As new business entities arose, Congress employed a similar approach to S corporations, 26 U. S. C. §§1361–1362; American shareholders of foreign business entities, 50 Stat. 822; and American shareholders of American-controlled foreign corporations, 26 U. S. C. §§951, 952, 957. Pp. 14–16.

(c) The Moores attempt to distinguish the MRT from those taxes long imposed by Congress and long upheld by this Court and argue that only the MRT is unconstitutional. Their ad hoc distinctions do not undermine the clear rule established by this Court's precedents. First, the Moores argue that taxes on partnerships are distinguishable from the MRT and not controlled by precedent because partnerships are not separate entities from their partners. But that assertion is incorrect. When the Sixteenth Amendment was ratified, the courts,

4                          MOORE v. UNITED STATES

                                    Syllabus

Congress, and state legislatures treated partnerships as separate entities in many contexts, and numerous States imposed taxes directly on partnerships for partnership income. The federal and state treatment of partnerships as separate legal entities for tax purposes contravenes the Moores' theory. Second, the Moores argue that taxes on S corporations are distinguishable from the MRT because shareholders of S corporations choose to be taxed directly on corporation income. But consent cannot explain Congress's authority to tax the shareholders of S corporations directly on corporate income. Rather, S corporations are another example of Congress's authority to either tax the corporation itself on corporate income or attribute the undistributed income to the shareholders and tax the shareholders. Third, the Moores try to distinguish Congress's long history of taxing shareholders of closely held foreign corporations—including through subpart F—on the ground that those laws apply "the doctrine of constructive realization." That term seems to be a one-off label created by the Moores to allow them to sidestep any existing tax that does not comport with their proposed constitutional rule. In any event, the Moores' constructive-realization theory does not distinguish the MRT from subpart F and other pass-through taxes. For example, the Moores claim that constructive realization turns on a sufficient degree of control over the entity. But the level of shareholder control with the MRT (at least 10 percent) is the same as under the longstanding subpart F tax. And if, as the Moores concede, subpart F is not unconstitutional under the "constructive realization" theory, then the MRT is likewise not unconstitutional on that theory. Pp. 16–22.

   (d) The Court's holding is narrow and limited to entities treated as pass-throughs. Nothing in this opinion should be read to authorize any hypothetical congressional effort to tax both an entity and its shareholders or partners on the same undistributed income realized by the entity. Nor does this decision attempt to resolve the parties' disagreement over whether realization is a constitutional requirement for an income tax. Pp. 22–24.

36 F. 4th 930, affirmed.

   KAVANAUGH, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SOTOMAYOR, KAGAN, and JACKSON, JJ., joined. JACKSON, J., filed a concurring opinion. BARRETT, J., filed an opinion concurring in the judgment, in which ALITO, J., joined. THOMAS, J., filed a dissenting opinion, in which GORSUCH, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES

No. 22–800

## CHARLES G. MOORE, ET UX., PETITIONERS *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[June 20, 2024]

JUSTICE KAVANAUGH delivered the opinion of the Court.

For tax purposes, Congress has long treated some corporations and partnerships as pass-throughs: Congress does not tax the entity on its income, but instead attributes the undistributed income of the entity to the shareholders or partners and then taxes the shareholders or partners on that income. This Court has long upheld those taxes.

Since 1962, Congress has likewise treated American-controlled foreign corporations as pass-throughs. That 1962 law (known as subpart F) attributes certain income, mostly passive income, of American-controlled foreign corporations to their American shareholders and then taxes those shareholders on that income.

In 2017, Congress enacted a new law that attributes more income, including active business income, of American-controlled foreign corporations to their American shareholders and then taxes those shareholders on that income. The question is whether that 2017 tax (known as the Mandatory Repatriation Tax or MRT) is constitutional under Article I, §§8 and 9 and the Sixteenth Amendment. This Court's longstanding precedents establish that the answer is yes.

## I

### A

In general, Congress taxes the income of American business entities such as corporations and partnerships in one of two ways.

First, some entities such as S corporations and partnerships are taxed on a pass-through basis. (S corporations are corporations with 100 or fewer shareholders where the shareholders have elected to be taxed on a pass-through basis. 26 U. S. C. §§1361–1362.) Instead of the entity itself paying taxes, income is attributed to the entity's owners, such as shareholders or partners, who then pay taxes on the income of the entity even if the entity has not distributed any money or property to them. §§61(a)(12), 701, 1366(a)–(c).

Second, other entities are taxed directly on their income. For example, some corporations file a return and pay taxes each year just like individual taxpayers. §11(a). When a corporation pays taxes on its income, its shareholders are ordinarily not taxed on that income. Instead, the shareholders typically pay taxes either when the corporation distributes money, stock, or other property to them as a dividend or when the shareholders sell their shares and have capital gains. §§61(a)(7), 1001. But the shareholders are not taxed on the corporate income itself.

Congress has devised more nuanced rules for foreign entities such as foreign corporations. For legal and practical reasons, Congress generally does not directly tax foreign corporations, including American-controlled foreign corporations, on the income that they earn outside of the United States. Instead, Congress has imposed some taxes on income of those corporations on a pass-through basis.

Most notably, starting in 1962, in what is known as subpart F of the Internal Revenue Code, Congress has treated American-controlled foreign corporations as pass-through entities: Subpart F attributes income of the

Cite as: 602 U. S. ____ (2024) 3

Opinion of the Court

corporation to American shareholders, and taxes those American shareholders on that income. 26 U. S. C. §§951–952. But subpart F applies only to a small portion of the foreign corporation's income, mostly passive income.

In 2017, Congress passed and President Trump signed the Tax Cuts and Jobs Act. 131 Stat. 2054. In a variety of ways not relevant to this case, the Act altered the United States' approach to international corporate taxation. The primary goal was to encourage Americans who controlled foreign corporations to invest earnings from their foreign investments back in the United States instead of abroad.

As relevant here, one piece of that intricate and multi-faceted 2017 Act imposed a new, one-time pass-through tax on some American shareholders of American-controlled foreign corporations. That one-time tax addressed one of the problems that had arisen under the old system: For decades before the 2017 Act, American-controlled foreign corporations had earned and accumulated trillions of dollars in income abroad that went almost entirely untaxed by the United States. The foreign corporations themselves were not taxed on their income. And other than subpart F, which applies mostly to passive income, the undistributed income of those foreign corporations was not attributed to American shareholders for the shareholders to be taxed.

As part of the complicated transition to a more territorial system, the 2017 Act imposed a one-time, backward-looking tax on that accumulated income. That backward-looking tax is known as the Mandatory Repatriation Tax or MRT. §965. Similar in structure to subpart F, the MRT attributed the long-accumulated and undistributed income of American-controlled foreign corporations to American shareholders, and then taxed those American shareholders on their pro rata shares of that long-accumulated income at a rate from 8 to 15.5 percent. §§965(a), (c), (d).[1]

---

[1] The Act also imposed a similar pass-through tax going forward.

4            MOORE v. UNITED STATES

Opinion of the Court

### B

In 2006, Charles and Kathleen Moore invested $40,000 in an American-controlled foreign corporation that one of their friends had started in India. In return, the Moores received a 13-percent ownership share. The company, KisanKraft, generated a great deal of income. But as of 2017, KisanKraft had not distributed that income to its American shareholders, including the Moores, meaning that neither KisanKraft nor the Moores had paid U. S. taxes on that income.

The MRT applied to the Moores because of their investment in KisanKraft. By the end of the 2017 tax year, the Moores' pro rata share of KisanKraft's accumulated income from 2006 to 2017 totaled about $508,000. After factoring in a deduction that is not relevant here, the Moores declared $132,512 in income under the MRT based on their KisanKraft shares. They owed $14,729 in taxes on that income.

The Moores paid that amount, then sued for a refund. They claimed that the MRT was unconstitutional for two reasons. First, they argued that the MRT violated the Direct Tax Clause of the Constitution because, in their view, the MRT was an unapportioned direct tax on their shares of KisanKraft stock. Second, they contended that the MRT violated the Due Process Clause of the Fifth Amendment because it applied retroactively to past income.

The District Court dismissed the suit, and the U. S. Court of Appeals for the Ninth Circuit affirmed. The Court of Appeals held that the MRT constitutes a tax on income within the meaning of the Constitution because "KisanKraft earned significant income, and the MRT assigns only a pro-rata share of that income to the Moores." 36 F. 4th 930, 936–937 (2022). The Court of Appeals also

---

§951A. That tax applies to what is referred to as "global intangible low-taxed income." §951A(a). That tax is not at issue in this case.

rejected the Moores' due process claim regarding retroactivity. *Id.*, at 938–939.

The Moores sought review in this Court, raising only their Direct Tax Clause argument. This Court granted certiorari. 599 U. S. ___ (2023).

## II

We must decide whether the 2017 Mandatory Repatriation Tax, or MRT, exceeds Congress's constitutional authority. To analyze that question, we begin with a brief review of Congress's taxing power under the Constitution.

After Independence in 1776 and under the Articles of Confederation in effect from 1781 to 1789, the Federal Government relied primarily on contributions from the States for revenue. The Federal Government's expenses and needs sometimes far outpaced the contributions that the States were willing to provide. As George Washington famously recognized during the Revolutionary War, reliance on the States to fund the National Government hampered important national priorities—including the war against the British. 12 Papers of George Washington: Revolutionary War Series 683–687 (P. Chase & F. Grizzard eds. 2002) (letter from Valley Forge).

The National Government's continuing revenue problems under the Articles of Confederation helped prompt the Constitutional Convention that convened in Philadelphia in the summer of 1787. The Federalist No. 30 (A. Hamilton). The Framers responded to the revenue problem by granting Congress an expansive taxing power.

Article I of the Constitution affords Congress broad "Power To lay and collect Taxes, Duties, Imposts and Excises." Art. I, §8, cl. 1. That power includes "'two great classes of'" taxes—direct taxes and indirect taxes. *Brushaber* v. *Union Pacific R. Co.*, 240 U. S. 1, 13 (1916).

Generally speaking, *direct* taxes are those taxes imposed

6                  MOORE *v.* UNITED STATES

Opinion of the Court

on persons or property. See *National Federation of Independent Business* v. *Sebelius*, 567 U. S. 519, 570–571 (2012). As a practical matter, however, Congress has rarely enacted direct taxes because the Constitution requires that direct taxes be apportioned among the States. To be apportioned, direct taxes must be imposed "in Proportion to the Census of Enumeration." U. S. Const., Art. I, §9, cl. 4; see also §2, cl. 3. In other words, direct taxes must be apportioned among the States according to each State's population.

So if Congress imposed a property tax on every American homeowner, the citizens of a State with five percent of the population would pay five percent of the total property tax, even if the value of their combined property added up to only three percent of the total value of homes in the United States. To pay five percent, the tax rate on the citizens of that State would need to be substantially higher than the tax rate in a neighboring State with the same population but more valuable homes.

To state the obvious, that kind of complicated and politically unpalatable result has made direct taxes difficult to enact. Indeed, the parties have cited no apportioned direct taxes in the current Internal Revenue Code, and it appears that Congress has not enacted an apportioned tax since the Civil War. See 12 Stat. 297; E. Jensen, The Taxing Power: A Reference Guide to the United States Constitution 89 (2005).

By contrast, *indirect* taxes are the familiar federal taxes imposed on activities or transactions. That category of taxes includes duties, imposts, and excise taxes, as well as income taxes. U. S. Const., Art. I, §8, cl. 1; Amdt. 16. Under the Constitution, indirect taxes must "be uniform throughout the United States." Art. I, §8, cl. 1. A "'tax is uniform when it operates with the same force and effect in every place where the subject of it is found.'" *United States* v. *Ptasynski*, 462 U. S. 74, 82 (1983).

Because income taxes are indirect taxes, they are permitted under Article I, §8 without apportionment. As this Court has said, Article I, §8's grant of taxing power "is exhaustive," meaning that it could "never" reasonably be "questioned from the" Founding that it included the power "to lay and collect income taxes." *Brushaber*, 240 U. S., at 12–13. In 1861, Congress enacted the Nation's first unapportioned income tax. 12 Stat. 309. The Civil War income tax was recognized as an indirect tax "under the head of excises, duties and imposts." *Brushaber*, 240 U. S., at 15; see also *Springer* v. *United States*, 102 U. S. 586, 598, 602 (1881).

In 1895, however, in *Pollock* v. *Farmers' Loan & Trust Co.*, this Court held that a tax on income from property equated to a tax on the property itself, and thus was a direct tax that had to be apportioned among the States. 158 U. S. 601, 627–628. The *Pollock* decision sparked significant confusion and controversy throughout the United States.

Congress and the States responded to *Pollock* by approving a new constitutional amendment. Ratified in 1913, the Sixteenth Amendment rejected *Pollock*'s conflation of (i) income from property and (ii) the property itself. The Amendment provides: "The Congress shall have power to lay and collect taxes on incomes, *from whatever source derived*, without apportionment among the several States, and without regard to any census or enumeration." U. S. Const., Amdt. 16 (emphasis added).

Therefore, the Sixteenth Amendment expressly confirmed what had been the understanding of the Constitution before *Pollock*: Taxes on income—including taxes on income from property—are indirect taxes that need not be apportioned. *Brushaber*, 240 U. S., at 15, 18. Meanwhile, property taxes remain direct taxes that must be apportioned. See *Helvering* v. *Independent Life Ins. Co.*, 292 U. S. 371, 378–379 (1934).